IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANAE COSSETTE-JOHNSON,                               3:12-cv-00383-MA

                    Plaintiff,                        OPINION AND ORDER
        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

BRUCE W. BREWER
419 Fifth Street
Oregon City, Oregon 97045

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

DAPHNE BANAY
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Danae Cossette-Johnson, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) disability benefits under Title XVI of the Act.    See 42 U.S.C. §§ 1381-1383f.    This court has jurisdiction pursuant to 42 U.S.C. § 405(g).    For the reasons set forth below, I REVERSE the final decision of the Commissioner and REMAND for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the instant application for SSI on September 13, 2005, and a duplicative subsequent application on October 23, 2009, alleging disability due to fibromyalgia, post traumatic stress disorder (PTSD), anxiety disorder, and chronic obstructive pulmonary disease (COPD).    Tr. 199.    Her application was denied initially and on reconsideration.    An Administrative Law Judge (ALJ) held a hearing on September 25, 2008, at which plaintiff was represented by counsel and testified.    Tr. 1443-83. Vocational Expert (VE) Gail Young was present throughout the hearing and testified.

On January 27, 2009, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act.    Tr. 1329-40. After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.    On April 5,

2011, this court reversed and remanded the Commissioner's decision for reconsideration of lay testimony, a reviewing physician's opinion, and the residual functional capacity (RFC) assessment. Tr. 1348-56.

On September 21, 2011, the ALJ held a second hearing, where plaintiff again testified and was represented by counsel.  Tr. 1305-25.  On November 17, 2011, the ALJ issued a decision again finding plaintiff not disabled within the meaning of the Act. 1277-90.  After the Appeals Council declined review, plaintiff timely appealed to this court.

## FACTUAL BACKGROUND

Born on April 13, 1960, plaintiff was 45 years old on the alleged onset date of disability and 51 years old on the date of the remand hearing.  Plaintiff has a high school equivalency with some post-secondary training in bookkeeping, and no past relevant work.  Tr. 1338-39.

Plaintiff alleged her disabilities became disabling on September 15, 2002.  In addition to her testimony at the hearings, plaintiff submitted three Adult Function Reports, two Pain Questionnaires, two Fatigue Questionnaires, and a Claimant Questionnaire.  Plaintiff's roommate, Bobby Joe Hubbard, submitted two Third Party Function Reports and an additional letter. Reverend Kenneth J. Church, one of plaintiff's addiction counselors, also submitted a letter.

David deVidal, Ph.D., examined plaintiff and submitted a psychological evaluation on June 15, 2001, for purposes of a prior disability application. Tr. 307-12. Similarly, on June 24, 2004, Gregory A. Cole, Ph.D., examined plaintiff and submitted a psychodiagnostic evaluation with respect to another prior disability application. Tr. 330-35. On June 28, 2004, Jeffrey A. Solomon, D.O., examined plaintiff and submitted a rheumatologic evaluation also in relation to a prior disability application. Tr. 337-39.

With respect to the instant application, on January 9, 2006, David Wigutoff, Ph.D., examined plaintiff and submitted a psychodiagnositc evaluation. Tr. 467-70. On June 14, 2006, Steven C. Vander Waal, M.D., examined plaintiff and submitted an evaluation. Tr. 505-06. Finally, on May 18, 2009, after the ALJ's initial decision, Leslie Carter, Ph.D., examined plaintiff at the referral of plaintiff's counsel, and submitted a psychological evaluation to the Appeals Council. Tr. 1264-73.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th

Cir. 1999).  The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.  See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the application date, September 13, 2005.  See 20 C.F.R. § 416.971 et seq.; Tr. 1279.

At Step Two, the ALJ determined that plaintiff's fibromyalgia, asthma, depression, generalized anxiety disorder, PTSD, pain disorder with both psychological and medical factors, personality disorder not otherwise specified, polysubstance abuse, and opioid dependance in remission were severe impairments.  See 20 C.F.R. § 416.921 et seq.; Tr. 1279.

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment.  See 20 C.F.R. §§ 416.925, 416.926; Tr. 1282-83.

The ALJ found that plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that plaintiff was to additionally avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and is limited to unskilled, routine, and repetitive work with no public contact.  Tr. 1283-88.

At Step Four, the ALJ determined that plaintiff had no past relevant work.  See 20 C.F.R. § 416.965; Tr. 1288.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Housekeeper/Cleaner and Product Assembler. See 20 C.F.R. § 416.969; Tr. 1289-90.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff argues the ALJ erred in four ways. First, plaintiff submits that the ALJ improperly discredited her testimony and subjective symptom complaints. Second, plaintiff maintains that the ALJ did not cite legally sufficient reasons for rejecting the findings of Dr. Carter, the examining psychologist retained by plaintiff. Third, plaintiff argues that the ALJ erred in rejecting the testimony of Bobby Hubbard. Finally, plaintiff asserts that the ALJ erred by requiring plaintiff to submit objective medical evidence to corroborate her fibromyalgia symptoms and in relying on reviewing physicians who cited the lack of objective medical evidence.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less

6 – OPINION AND ORDER

than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I. Rejection of Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility

determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the first hearing on September 25, 2008, plaintiff testified that her fibromyalgia substantially limits her activities of daily living and causes variable, through often severe pain. Tr. 1449-50. Plaintiff testified that on some days she can do some household chores, but on others she can do very little other than try to make herself comfortable. Tr. 1450-51. Some days, plaintiff stated, she cannot leave bed at all. Tr. 1453. Plaintiff testified that she experiences bad days "two to three-quarters" of the time, but that there are never days in which she can get by without sleeping or napping. Tr. 1454. Plaintiff reported that she uses methadone to control normal pain, and additionally takes oxycodone for breakthrough pain. Tr. 1450-51. In addition, plaintiff reported that she has a "very minimal"

prescription of medical marijuana through which she takes "one or two puffs once every three or four days." Tr. 1466.

In her Function Report completed on January 24, 2006, plaintiff reported that her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. Tr. 240. In her Function Report submitted November 19, 2005, plaintiff reported her condition also affected her ability to climb stairs. Tr. 215. Plaintiff additionally reported that her limitations affected her ability to dress, feed herself, and use the toilet, and that she has difficulty washing her hair, getting out of the tub, and dressing her upper body. Tr. 211, 236. In her Function Reports, plaintiff reported she could walk between one and four blocks at a time. Tr. 240, 1531. As for social activities, plaintiff reported that she speaks on the telephone with family daily and sees her granddaughter once per month, but otherwise she "[does not] go anywhere." Tr. 214-15, 239-40, 1535.

Although the hearings were nearly three years apart, plaintiff testified that her functional limitations and daily routine were "about the same" at the September 21, 2011 hearing as they were at the September 25, 2008 hearing. Tr. 1316.

The ALJ rejected plaintiff's testimony because plaintiff made inconsistent statements to medical sources, her subjective symptom

9 - OPINION AND ORDER

testimony was unsupported by objective medical findings in the
record, and her alleged symptoms were inconsistent with her
activities of daily living.  Tr. 1284-86.

### A.  Inconsistent Statements to Medical Sources

The ALJ's finding that plaintiff made inconsistent statements
to medical sources is supported by substantial record evidence and
constitutes a clear and convincing basis for rejecting plaintiff's
testimony.  See Tr. 1286.

On May 18, 2009, Dr. Carter summarized plaintiff's reported
activities of daily living as follows:

> She reports that she currently lives with her partner
> Bobby Hubbard and her therapy dog Benson.  She states
> that as a result of her many symptoms she is unable to
> work and has significant difficulty with activities of
> daily living.  She has difficulty getting dressed
> particularly with getting bras and shirts on due to arm
> pain and weakness.  She requires much more time than
> before to complete her simplified chores like cooking
> simple to prepare [sic] meals.  Bobby does many of the
> household chores.  She related that due to her pain
> problems she uses a shower bench to bath [sic].  She
> moves so slowly that a shower may take 50 minutes or
> until the water gets cold.  She related that she still
> may not be finished.  She may finish washing other parts
> of her body on another day.  For example she indicated
> that she does not shave her legs and wash her hair in the
> same bath.  She uses her therapy dog that is big to pull
> her out of the bathtub.  She also relates that her sleep
> is very broken.  She is fearful enough at night that she
> will sleep for 2-4 hours several times during the day and
> night (e.g., 5-8 pm, 10 pm - 1 am, 3 am - 6am).
>
> She indicated that on an average day she may stay in her
> sleeping cloths [sic] for most or all of the day since
> dressing is painful and difficult.  She also finds that
> her weight gain makes finding clothing she already owns
> that fit difficult.  At 6:30 or 7:00 am she will have

coffee and watch TV. Around 9 am she will prepare breakfast (a bowl of cereal), put the dog out on his line in the back yard, and organize medication for the day. She will take shower [sic] after 11 am. Due to her morning slowness she has all appointments scheduled in the afternoon. She relates that she has significant problems with forgetting appointments. She uses a calendar to try to keep track of appointments. She relies on her partner to help her remember appointments and times to take meds. She has therapy goals of going two places per week. Each week she sees her therapist, Rebecca Anderson, LPC for 90 minutes. She has also been getting dental work done since the methadone is reportedly making her teeth brittle. Her teeth are breaking. She will usually skip lunch and prepare a simple one pan dinner or open prepared food around 5 or 6 pm. Kitchen cleanup is shared. She will often go to bed after dinner. She does try to call her granddaughter daily. She does her shopping on a monthly basis if possible. She rarely goes places outside of her routine.

Tr. 1266-67 (errors in original).

The day after her evaluation with Dr. Carter, however, plaintiff reported to her primary care physician, Gerardo Arnaez Zapata, M.D., that her "pain is better" with a recent change in her medication, and that she "feels more active." Tr. 1681. Accordingly, Dr. Arnaez found that "she's done very well with both her pain control and functionally she seems much improved." Id. The next week, on May 26, 2009, plaintiff told Dr. Arnaez that "she is doing house cleaning and feeling like she can do most her needed activity." Tr. 1679. A week later, on June 2, 2009, Dr. Arnaez noted that plaintiff "planted flowers yesterday so function is much better." Tr. 1676. On June 23, 2009, plaintiff told Dr. Arnaez

that "on her current dose she is becoming quite active and functional." Tr. 1671.

Plaintiff reported to Dr. Carter that "[d]ue to her morning slowness she has all appointments scheduled in the afternoon." Tr. 1266. Yet, during 2009 alone, plaintiff presented in the morning for appointments at her primary care physician's office 15 times, including arriving at 9:44 am for an appointment the day after her evaluation with Dr. Carter. Tr. 1642, 1645, 1648, 1652, 1663, 1671, 1676, 1679, 1681, 1685, 1687, 1696, 1698, 1702, 1704. The significant differences between the very limited activities of daily living plaintiff reported to Dr. Carter, the psychologist examining her at her attorney's referral, and the much more positive contemporaneous reports made to her primary care physician provide significant evidentiary support for the ALJ's finding that plaintiff made inconsistent statements to medical sources.

Additionally, as the ALJ noted, plaintiff told examining psychologist, Dr. Wigutoff, that her fibromyalgia caused her trouble sitting and walking, but Dr. Wigutoff noted that plaintiff did not show any signs of discomfort while sitting through the 75 minute interview, and after the appointment walked several blocks at a normal pace to her car. Tr. 469.

Plaintiff also made inconsistent statements to medical sources about her drug and narcotic pain medication use. For instance, in February of 2006, plaintiff made inconsistent statements regarding

12 – OPINION AND ORDER

methadone she was prescribed, but that her probation officer and doctor later agreed she should not be taking.   Plaintiff told her probation officer that she had counted and flushed the extra methadone pills at Dr. Wendell Tollerton's office, but then told Dr. Tollerton's staff that she had flushed the pills elsewhere despite Dr. Tollerton's request that she return them to his office. Tr. 487-89.

Moreover, on July 9, 2009, plaintiff told Navnit Kaur-Jayaram, M.D., a pain management consulting physician, that she had "experimented with drugs in the past," and did "not use recreational drugs."   Tr. 1741.   The statement that she merely "experimented" with drugs in the past is contradicted by her reports to other doctors.   For example, plaintiff told Dr. Wigutoff that "most of her adult life was spent in active alcohol and drug abuse."   Tr. 468.   Plaintiff additionally reported to Dr. Cole that she previously used cocaine "whenever [she] could," marijuana "every day," and other drugs on multiple occasions.   Tr. 331, 468. In sum, the ALJ's finding that plaintiff made inconsistent statements to medical sources is amply supported by the record, and provides a compelling reason to reject plaintiff's subjective symptom testimony.

**B.   Lack of Objective Evidence**

The ALJ also cited the lack of objective evidence of plaintiff's limitations as a reason to discredit her testimony.

While lack of objective medical evidence supporting the extent of a claimant's limitations cannot be the sole basis for discrediting the claimant's testimony, it can be a clear and convincing reason when combined with others. See Thomas, 278 F.3d at 960. Here, the ALJ properly cited lack of objective medical evidence as one reason to reject plaintiff's testimony.

As Dr. Vander Waal noted, "[t]here are no objective findings on examination today other than for tenderness over the classical trigger points for fibromyalgia. Her self imposed [sic] limitations are noted above. There are no limitations on her ability to sit, travel, hear or speak." Tr. 506. This is consistent with the findings of Dr. Solomon, who found "[v]ery little in the way of objective physical findings." Tr. 339. Plaintiff's 2007 primary care physician, Johanna Warren, M.D., appeared to agree, finding that "[a]nxiety is Danae's predominant problem," and that plaintiff's "[untreated] anxiety [was] definitely worsening pain perception." Tr. 845, 1032.

In addition, as the ALJ noted, multiple medical sources had questions about the credibility of plaintiff's subjective reporting and participation in examination. As the ALJ noted, Dr. Cole found some evidence that plaintiff was putting in a poor effort on some portions of the mental examination. Tr. 335. Dr. Solomon found that plaintiff's stated limitations "seem somewhat excessive," even if not "completely unrealistic." Tr. 339. Dr. Wigutoff noted that

plaintiff's allegations of sitting and walking difficulties were belied by her ability to comfortably sit through the 75 minute examination and walk several blocks to her car. Tr. 469. Finally, as noted above, the statements plaintiff made to Dr. Carter were inconsistent with contemporaneous statements made to her primary care physician.

As Dr. Solomon pointed out, however, "[f]ibromyalgia is a painful condition in which only subjective information is possible by the very nature of the disease." Tr. 339. Accordingly, the ALJ could not rely solely on the lack of objective evidence. In this case, however, the ALJ could reasonably find that the lack of objective medical evidence, in combination with the incongruity between plaintiff's alleged symptoms and objective presentation, her reported poor effort in examination, and her excessive symptom allegations undermined plaintiff's testimony.

### C.   Activities of Daily Living

Finally, the ALJ discounted plaintiff's testimony because her activities of daily living were inconsistent with her alleged limitations.   Tr. 1285, 1288.   As described above, plaintiff alleged at both hearings and in her Function Reports that her fibromyalgia and anxiety symptoms forced her to live a largely sedentary, solitary lifestyle.

The ALJ, however, noted several instances in the record where plaintiff reported engaging in activities inconsistent with the

limitations she reported to the ALJ.  There are multiple instances in the record of plaintiff traveling from the Oregon Coast to Portland to visit and care for her ailing father.  E.g., Tr. 2143, 2172.  On June 2, 2009, and July 12, 2011, plaintiff reported planting flowers and gardening.  Tr. 1676, 2139.  Plaintiff reported to medical providers that she swims and does water exercises, and had obtained a family pass to the local pool.  Tr. 2128, 2147.  On June 23, 2011, plaintiff reported that she spent part of that week painting her house, and despite some discomfort in her arm, enjoyed the work.  Tr. 2135.  On April 12, 2011, plaintiff reported doing yoga exercises.  Tr. 2046.  Plaintiff additionally reported to medical providers that she was walking "as much as possible," including taking her dog on a one mile walk, and going running on the beach.  Tr. 2045, 2063, 2081.

The ALJ could reasonably conclude that these activities were inconsistent with the extensive limitations described in plaintiff's Function Reports, and the 2008 and 2011 hearings.  The ALJ properly discounted plaintiff's subjective symptom testimony on this basis.  I conclude that these reasons, taken together, constitute clear and convincing reasons for discounting plaintiff's testimony.  The ALJ properly discredited plaintiff's subjective testimony.

///

///

## II.  Rejection of Dr. Carter's Opinion

Plaintiff next argues that the ALJ erred in silently rejecting Dr. Carter's opinion. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record.  Id.  "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).  "'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'"  Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)).  The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

The parties agree that the ALJ did not address Dr. Carter's opinion in the decision.  Nonetheless, the Commissioner argues that the ALJ's failure to address Dr. Carter's opinion is harmless because the ALJ could have rejected it on account of its reliance

on plaintiff's properly discredited subjective reporting.  This argument is without merit.

The ALJ did not discuss Dr. Carter's opinion.  That the ALJ arguably could have provided legally sufficient reasons for rejecting Dr. Carter's opinion is irrelevant.  The limitations described by Dr. Carter were not otherwise accounted for in the RFC.  Thus, I cannot conclude that the ALJ's failure to discuss Dr. Carter's opinion was harmless error.

## III. Rejection of Lay Testimony

Plaintiff next argues that the ALJ cited legally insufficient reasons for partially rejecting the lay witness statements of plaintiff's roommate, Bobby Hubbard.  Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  To discount lay witness testimony, the ALJ must provide reasons that are germane to the witness.  Id.

The ALJ gave Mr. Hubbard's statements "some weight because they appear to be generally consistent with the record as a whole." Tr. 1288.  The ALJ did not give Mr. Hubbard's testimony great weight, however, because it contained "vague descriptions," which the ALJ did not find persuasive.  Id.

In his Third Party Function Report, Mr. Hubbard reported that plaintiff's typical day consists of eating breakfast, resting "for

a while," doing dishes, taking a nap, watching television, eating dinner, resting for 30-45 minutes, doing dishes again, watching between one and three hours of television after dinner, and then going to bed. Tr. 227. Mr. Hubbard reported that plaintiff feeds and gives water to her dog, cooks simple meals, and does some household chores. Tr. 228-29. Mr. Hubbard stated that plaintiff can go shopping, but only with his help. Tr. 230.

Mr. Hubbard reported that plaintiff's disabilities affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, use her hands, and get along with others. Tr. 232. Mr. Hubbard stated that when he drives plaintiff to the doctor, they have to stop three times, and after the appointment plaintiff is "down for the next three days." Tr. 228, 302.

The ALJ partially discredited Mr. Hubbard's testimony because some of the descriptions of plaintiff's limitations were vague and internally inconsistent. As the ALJ pointed out, Mr. Hubbard failed to reconcile plaintiff's ability to watch television for up to three hours at a time with the necessity of stopping three times during a 60 minute drive to a medical appointment. The ALJ could reasonably find inconsistency between these two statements and partially discredit Mr. Hubbard's statements on that basis.

In addition, as the ALJ noted, Mr. Hubbard did not explain why plaintiff was "down for the next three days" after attending a

19 - OPINION AND ORDER

medical appointment. The ALJ could reasonably find this description of a substantial limitation vague and unexplained. Both of these reasons speak to the reliability of Mr. Hubbard's description of what would be very significant limitations, if entirely credited. I conclude that these reasons constitute "arguably germane" reasons for partially discrediting Mr. Hubbard's testimony. See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ did not err in his consideration of the lay testimony.

## IV.  Requirement of Objective Findings

Finally, plaintiff argues, without elaboration, that the ALJ erred in requiring plaintiff to produce objective findings of fibromyalgia.[1] The Ninth Circuit Court of Appeals has held that an ALJ may not "effectively require 'objective' evidence" of fibromyalgia because the disease, by its nature, "eludes such measurement." Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d. Cir. 2003)). As such, the ALJ may not discount a plaintiff's fibromyalgia symptoms simply because they are not supported by objective medical evidence.

---

[1] Plaintiff also argues, without explanation, that the ALJ erred in relying on reviewing physicians who "effectively required" objective evidence of fibromyalgia. Plaintiff, however, does not explain which reviewing physician allegedly did so. Ultimately, however, it is the ALJ's decision that must be supported by substantial evidence, not the reviewing physicians' opinions.

Here, however, the ALJ did not reject plaintiff's fibromyalgia limitations out of hand because they were unsupported by objective medical evidence. Rather, the ALJ limited plaintiff to light work based on her physical limitations including fibromyalgia, considered and properly discredited plaintiff's subjective symptom testimony, and weighed most of the medical testimony. Thus, the ALJ did not "effectively require" objective evidence of fibromyalgia by rejecting plaintiff's fibromyalgia symptoms solely because they were unsupported by objective evidence.

## V.    Remand

After finding the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." <u>Id.</u> The court should grant an immediate award of benefits when:

///

///

///

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

I find that there are outstanding issues to be resolved. The ALJ clearly erred in neglecting to discuss Dr. Carter's opinion. "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." Strauss v. Comm'r Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011). Additionally, it is unclear how Dr. Carter's opinion would affect the disability determination in light of the substantial amount of other medical testimony in the record. Because outstanding issues remain which must be resolved, and because it is not clear from the record that plaintiff is entitled to disability benefits, I reverse the ALJ's decision and remand for further administrative proceedings consistent with this opinion.

I remand to the ALJ for the limited purpose of consideration of Dr. Carter's opinion. If the ALJ credits Dr. Carter's opinion, he must incorporate it into the RFC by weighing it along with the other medical testimony in the record, and accordingly determine

what effect it has on the ultimate disability analysis.  If the ALJ fully or partially rejects Dr. Carter's opinion, he must provide legally sufficient reasons for doing so.  Due to the limited nature of this remand, the ALJ need not hold a new hearing.  In addition, the ALJ need not revisit issues that have been resolved in this proceeding.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this *16* day of April, 2013.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge